## AUTHORITY TO REMOVE SANITARY POLICEMAN.

Circuit Court of Cuyahoga County.

STATE OF OHIO, EX REL HENRY GOLLWITZER, v. HERMAN C. BAEHR, AS PRESIDENT OF THE BOARD OF HEALTH OF THE CITY OF CLEVELAND.

Decided, May 8, 1911.

*Municipal Corporations—Sanitary Policeman—Tenure of Office.*

A sanitary policeman appointed in 1910, not from any list of eligibles furnished by the Civil Service Commission or as an emergency employee of the mayor, is removable at the pleasure of the board of health.

*F. W. Treadway* and *Mathews & Orgill,* for plaintiff in error. *Newton D. Baker,* contra.

HENRY, J.; JONES, J., and DUSTIN, J. (sitting in places of Judges Winch and Marvin), concur.

This is an error proceeding to reverse the judgment for defendant rendered upon the sustaining of a demurrer to a petition in mandamus, begun on the relation of Gollwitzer to compel the defendants, as the board of health of the city of Cleveland, to restore him to his position as sanitary policeman, to which he was appointed February 1, 1910, and from which he was discharged April 13, 1911.

He founds his alleged right to reinstatement upon the tenure fixed by the act approved March 27, 1911, entitled "An act to amend Sections 4411, 4418 and 4484 of the General Code, and to repeal said original sections, extending the merit system to employes of the board of health in municipal corporations."

Section 4412, as thus amended, provides among other things that, "the board may suspend but not remove any member of the sanitary police, now serving or hereafter appointed for cause authorizing the dismissal of any person in the classified service, and shall certify such fact together with the cause of such suspension to the civil service commission," etc.

The main question before us is whether Gollwitzer, at the time of his discharge was, within the meaning of this section, "a member of the sanitary police now serving."

The Paine law (99 O. L., 562), passed April 29, 1908, effective in part on August 1, 1909, and in its entirety after January 1, 1910, provides in Section 158 that the unclassified service embraces a large number of municipal officers and employes including "the head or chief of any division or principal department of any city relating to health;" and the classified service shall comprise officers and places not included in the unclassified service.

We think this means that Gollwitzer's place as sanitary policeman was within the classified service, notwithstanding the provisions of Section 4411, General Code, prior to the recent amendment, that the health "board may also appoint, with the consent of council, as many persons for sanitary duty as in its opinion the public health and sanitary condition of the corporation require," etc., and of Section 4479 that "the unclassified service shall include the positions of officers whose appointment is subject to confirmation by the council."

It is not necessary, however, to decide whether Gollwitzer was in the classified or unclassified service, for, in either case, he was irregularly appointed. If he was in the unclassified service because his appointment was "subject to confirmation by the council," then his appointment was irregular because he was not so confirmed. If, on the other hand, his position was as we

are inclined to believe, within the classified service, he was not appointed from any list of eligibles furnished by the civil service commission; nor did he, as an emergency appointee, receive his appointment from the mayor.

We hold, therefore, that Section 4412, as amended March 27, 1911, has no application to him as a "member of the sanitary police now serving," because the Legislature must be presumed to have meant only such sanitary police as were then lawfully serving by virtue of appointments legally made in accordance with statute.

In the case of *State, ex rel Sipp*, v. *Stoble*, 2 C.C.(N.S.), 293, it was held that the incumbents of the office of superintendent of police and chief of the fire department of the city of Hamilton, Ohio, at the time the new municipal code went into effect March, 1903, were officers *de facto*, within the protection of Section 167, notwithstanding that the act creating the offices in and under which they were acting is unconstitutional. But that case is not like this for there all the municipal offices and their incumbents were only *de facto* such, and the Legislature in extending the tenure of the incumbents could have had in mind no one else in the city of Hamilton to whom such legislation could apply. Here, however, it was the duty of the board of health to displace all sanitary policemen irregularly appointed as fast as the civil service commission provided eligible lists from which to appoint their successors. It can not be and is not claimed that Gollwitzer's successor might not long ago have been lawfully appointed. Before and at the time of his discharge there was no legal restraint whatever upon the board of health from taking that action, but, on the contrary, there was an imperative duty resting upon them so to do.

We find no error in the record before us and the judgment is affirmed.